**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**TONYIA WILSON MOORE**,

     Plaintiff,

v.

**TREATMENT CENTERS OF AMERICA
GROUP, LLC d/b/a Treatment Center of
Valdosta, and VALDOSTA ADDICTION
ASSOCIATES, INC. d/b/a Treatment
Center of Valdosta**,

     Defendants.

Civil Action No. 7:12-CV-22 (HL)

**ORDER**

     This case is before the Court on Defendants' Second Motion for Summary Judgment (Doc. 33). Plaintiff has filed a response, and Defendants have filed a reply. After careful consideration of the arguments contained in the parties' briefs, the relevant law, and the record as a whole, the Court grants the motion.

**I.    SUMMARY JUDGMENT STANDARD**

     Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party, Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002), but the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d

538 (1986)).“If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.” Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511 (internal citations omitted).

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

On or about December 20, 2010, Plaintiff was hired as a substance abuse counselor at Treatment Center of Valdosta. (DSOMF at ¶ 1).[2] At all times relevant to Plaintiff's complaint, Akisha Fedd was Treatment Center of Valdosta's clinical director. (DSOMF at ¶ 6). Akisha Fedd participated in hiring Plaintiff as a substance abuse counselor. (DSOMF at ¶ 8).

One of Akisha Fedd's responsibilities at the clinic was conducting orientation for new employees. During her orientation, Plaintiff signed a number of documents but did not read any of the materials at that time. (Deposition of Tonyia Wilson Moore, p. 87). Even though Plaintiff acknowledged in writing receiving certain materials, including an employee handbook, Plaintiff did not actually receive a copy of the handbook until after her employment was terminated. (Moore Dep. at 86).[3]

---

[1] Additional background can be found in the Court's order denying Defendants' First Motion for Summary Judgment, entered on April 3, 2013. (Doc. 32).

[2] “DSOMF” refers to Defendants' Statement of Material Facts (Doc. 34). The cited paragraphs are those admitted by Plaintiff. “PSOMF” refers to Plaintiff's Statement of Material Facts (Doc. 39). The cited paragraphs are those admitted by Defendants.

[3] The employee handbook contains policies and procedures for handing employee grievances. (DSOMF at ¶¶ 35, 37). Grievances based on harassment or retaliation are to be submitted on a grievance form within 10 days from the complained-of occurrence.

Akisha Fedd, along with other clinic employees, trained Plaintiff for her new position. (Moore Dep. at 24). All new substance abuse counselors, including Plaintiff, had to complete a 90-day probationary period. (DSOMF at ¶ 5). Akisha Fedd supervised Plaintiff during her probationary period, which meant Plaintiff had to turn in all of her completed work to Akisha Fedd for review. (DSOMF at ¶ 11; Deposition of Akisha Fedd, p. 47). Akisha Fedd reviewed Plaintiff's work and made corrections as necessary. (Fedd Dep. at 47-48).

On January 20, 2011, Akisha Fedd tickled Plaintiff in the abdomen area while Plaintiff was sitting at her desk. (Moore Dep. at 56). The touching was done without Plaintiff's permission or consent. (Moore Dep. at 63-64). Akisha Fedd did not say anything to Plaintiff when she touched her. (DSOMF at ¶ 22). Akisha Fedd's actions, which Plaintiff considered to be sexually inappropriate behavior, made Plaintiff uncomfortable. (Moore Dep. at 63-64, 66-67).

Plaintiff contacted Yolanda Fedd, the clinical director and Akisha Fedd's sister-in-law, that same day and told Yolanda Fedd that Akisha Fedd had tickled her.[4] Plaintiff told Yolanda Fedd that Akisha Fedd's conduct made her feel

---

(DSOMF at ¶ 36). Employee complaints are to be handled first by addressing the complaint with the other employee, (DSOMF at ¶ 37), and if not sucessful, the aggrieved employee is to document the complaint on an employee complaint form. (DSOMF at ¶ 38). It is undisputed that Plaintiff never undertook any of these steps in connection with her complaints, but she contends she did not do so because she did not have a copy of the handbook. Ultimately, however, Plaintiff's failure to follow clinic procedure does not affect the outcome of the case.

[4] For clarity's sake, the Court will refer to Yolanda Fedd and Akisha Fedd by their full names. Akisha Fedd was Yolanda Fedd's supervisor.

uncomfortable. (DSOMF at ¶ 25). Plaintiff did not make a written complaint about the incident and did not speak directly to Akisha Fedd about the incident. (DSOMF at ¶ 26).

On February 25, 2011, Plaintiff was standing in a doorway at the clinic waiting on a patient. Akisha Fedd walked up behind Plaintiff and rubbed down Plaintiff's body with her hand from Plaintiff's waist to her hip. (Moore Dep. at 81).[5] Akisha Fedd again said nothing when this happened, and Plaintiff said nothing to Akisha Fedd either. (Moore Dep. at 83). Plaintiff reported the incident to Yolanda Fedd (Moore Dep. at 84), but did not submit a written complaint. (DSOMF at ¶ 29).

The February 25 incident happened on a Friday. The following Monday, February 28, Akisha Fedd and Yolanda Fedd had a closed door meeting that lasted for an hour. (Affidavit of Tonyia Wilson Moore, ¶ 3). Such a meeting was an unusual occurrence in the office. (Moore Aff. at ¶ 3). Akisha Fedd did not talk to Plaintiff for the remainder of the week, which was also unusual. (Moore Aff. at ¶ 4). Plaintiff, however, has no personal knowledge as to whether Yolanda Fedd ever discussed Plaintiff's complaints with Akisha Fedd. (Moore Dep. at 91).

Other than the 90-day evaluation discussed below, Plaintiff did not receive any formal work evaluations during her time at the clinic. The only documents in

---

[5] Needless to say, Akisha Fedd denies that either the January 20 or the February 25 incident took place. But for purposes of deciding Defendants' motion, the Court must accept Plaintiff's claims as true.

the record reflecting Plaintiff's work are checklists that were reviewed by Akisha Fedd and returned to Plaintiff. (Fedd Dep. at 67-68). For instance, Akisha Fedd returned a 90-day treatment plan checklist dated January 21, 2011 to Plaintiff on which Akisha Fedd drew a smiley face and noted "Any questions - see Yolanda." (Fedd Dep. at Ex. 1B). Akisha Fedd returned an annual checklist dated February 1, 2011 to Plaintiff on which she drew a smiley face and noted "Much better job." (Fedd Dep. at Ex. 1G). On another annual checklist dated February 1, Akisha Fedd wrote "overall good job." (Fedd Dep. at Ex. 1H). Akisha Fedd also returned a February 28, 2011 master treatment plan checklist to Plaintiff on which she noted "methods & intervention much better on this plan than the other one." (Fedd Dep. at Ex. 1I).[6]

On March 4, 2011, Plaintiff was called to a meeting with Akisha Fedd and Jeremy Pate, Akisha Fedd's supervisor. Plaintiff was given her 90-day evaluation.[7] In the evaluation, prepared by Akisha Fedd, Plaintiff was given below average to average ratings in all facets of her job. In the "supervisor comments" section, Akisha Fedd wrote that Plaintiff provided substandard work and that she was not comfortable with Plaintiff managing her case load independently. Akisha

---

[6] Plaintiff also received back three checklists dated January 24, 2011 and one checklist dated January 25, 2011 on which smiley faces were drawn. Akisha Fedd testified that she did not draw the smiley faces on those four checklists. It is unclear from the record who was reviewing Plaintiff's work other than Akisha Fedd.

[7] Plaintiff had been working at the clinic for 74 days at that point.

Fedd further wrote that Plaintiff had a high level of discomfort with her job responsibilities but had shown some improvement in terms of working more independently. (Moore Dep. at Ex. 1). Akisha Fedd recommended that Plaintiff's employment be terminated, and the recommendation was accepted by Pate. (Fedd Dep. at 62). Plaintiff's employment was terminated during the March 4 meeting.[8] While Akisha Fedd states that she verbally counseled Plaintiff about her work performance prior to the March 4 meeting (Fedd Dep. at 47), Plaintiff contends she was unaware of any problems with her work prior to her termination. (Moore Dep. at 28, 35, 52, 120-23).

After being fired, Plaintiff sent correspondence to the clinic administrators in which she alleged that Akisha Fedd had sexually harassed her and that she had been subjected to conversations during which co-workers discussed male patients' genitalia. (DSOMF at ¶ 20). Plaintiff wrote that she had complained to Yolanda Fedd about two incidents of sexual harassment committed by Akisha Fedd, and that she told Yolanda Fedd because Akisha Fedd said to take all questions and complaints to Yolanda Fedd. (Moore Dep. at Ex. 10). Plaintiff also wrote that her work during February had been praised by Akisha Fedd, and only after reporting the February 25 incident to Yolanda Fedd did any problems with her work arise. (Moore Dep. at Ex. 10).

---

[8] When asked during her deposition why Plaintiff was fired, Akisha Fedd testified that Plaintiff had organizational problems, was unable to keep up with her caseload, did not turn in documentation on time, and had problems creating treatment plans. (Fedd Dep. at 46).

On April 16, 2012, Plaintiff filed a three count amended complaint against Defendants Valdosta Addiction Associates, Inc. d/b/a Treatment Center of Valdosta and Treatment Centers of America Group, LLC d/b/a Treatment Center of Valdosta. Count One alleges tangible employment sexual harassment. Count Two alleges hostile work environment sexual harassment. Count Three alleges retaliation. Defendants previously moved for summary judgment on the basis that Valdosta Addiction Associates is not an employer as defined by Title VII. The Court denied Defendants' motion, finding that there was a genuine issue of material fact as to whether Valdosta Addiction Associates and Treatment Centers of America constitute an integrated employer for purposes of Title VII. Defendants have now moved for summary judgment on the merits of Plaintiff's complaint.

## III.   ANALYSIS

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). While Title VII does not specifically mention sexual harassment, the statutory phrase "terms, conditions, or privileges of employment" includes within its scope a discriminatorily hostile or abusive environment. Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999).

8

A.     Counts One and Two - Tangible Employment Action and Hostile Work Environment Sexual Harassment

To establish sexual harassment under Title VII, an employee must prove (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1244 (11th Cir. 2004); Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) Mendoza, 195 F.3d at 1244; Johnson v. Booker T. Washington Broad. Serv., 234 F.3d 501, 508 n. 7 (11th Cir. 2000).

A plaintiff may rely on one of two theories to prove sexual harassment in violation of Title VII. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753-54, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998). Under the first theory, the plaintiff must prove that the harassment culminated in a "tangible employment action" against her. Id. A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at 761, 118 S.Ct. at 2268. Under the second theory, which is known as the "hostile work environment" theory, the plaintiff must prove that she

suffered "severe or pervasive conduct." Id. at 754, 118 S.Ct. at 2265. "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

In Count One of her complaint, Plaintiff contends she was fired and thereby suffered a tangible employment action for refusing Akisha Fedd's sexual advances. In Count Two of her complaint, Plaintiff contends that before she was fired she was subjected to sexual harassment that was sufficiently pervasive and severe to create a hostile work environment.[9]

Plaintiff's case is based on claims of same-sex sexual harassment. In Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), the Supreme Court acknowledged "that sex discrimination consisting of same-sex harassment is actionable under Title VII. . . ." However, the Court was also careful to emphasize that claims of same-sex

---

[9] Technically these are not separate legal claims. Instead, "tangible employment action" and "hostile work environment" are labels used to describe the two ways sexual harassment can rise to the level of violating Title VII. Hulsey, 367 F.3d at 1246. The labels are relevant only "to the extent they illustrate the distinction between cases involving a threat which is carried out and offensive conduct in general." Ellerth, 524 U.S. at 753, 118 S.Ct. at 2265. "When we talk about tangible employment action and hostile environment, what we are or should be talking about are the two alternative ways a plaintiff may establish a basis for the employer's vicarious liability, which is the fifth factor of a Title VII sexual harassment claim." Hulsey, 367 F.3d at 1246 (citing Ellerth, 524 U.S. at 751, 754, 765-66, 118 S.Ct. at 2264, 2265, 2271).

harassment remain subject to the same requirements as claims of opposite-sex harassment; namely, a plaintiff making either type of sexual harassment claim "must always prove that the conduct at issue . . . actually constituted 'discrimina[tion] . . . because of . . . sex." Id. at 81, 118 S.Ct. at 1002. Thus, when considering whether a plaintiff has established her claim of "same-sex harassment, [the] court[ ] first must determine whether the harasser's conduct constitutes sex discrimination," La Day v. Catalyst Tech., Inc., 302 F.3d 474, 478 (5th Cir. 2002), or in other words, the court must determine whether the alleged discrimination was because of the plaintiff's sex. It is only if this question is answered in the affirmative that the court goes on to decide whether the challenged conduct meets the applicable standards for either a tangible employment action claim or a hostile work environment claim. Id. (citation omitted).[10]

In construing Title VII's prohibition of discrimination "because of . . . sex," the Oncale Court observed that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex." Id. at 80. The Court went on to note that

---

[10] The Court recognizes that Defendants did not specifically address the tangible employment action issue until their reply brief. However, Counts One and Two of Plaintiff's complaint do not raise separate claims, but rather separate theories of liability. The Court finds it proper to address both of Plaintiff's asserted theories in this Order.

these same assumptions may not as readily be made in the same-sex harassment context, but confirmed that Title VII does cover same-sex harassment claims as long as they meet the statutory requirements. Id. However, "[e]stablishing the discriminatory aspect of same-sex harassment is more difficult than establishing opposite-gender harassment." E.E.O.C. v. McPherson Cos., Inc., 914 F.Supp.2d 1234, 1242 (N.D. Ala. 2012). The Oncale Court recognized three ways by which a plaintiff can prove that same-sex sexual harassment is traceable to the plaintiff's sex:

> The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harassment is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of . . . sex."

Id. at 80-81.

With respect to this case, in order to meet the "based on sex" prong of a sexual harassment claim, Plaintiff must show that: (1) Akisha Fedd was a

homosexual and her behavior was motivated by actual homosexual desire; (2) Akisha Fedd had a general hostility towards women in the workplace; or (3) Akisha Fedd treated males and females differently in the workplace. Plaintiff has not presented any evidence to support, and the record does not support, a finding of any of these alternatives. Because Plaintiff has not shown that Akisha Fedd's conduct was based on Plaintiff's sex, Counts One and Two of her complaint fail as a matter of law.[11] *See* <u>Mendoza</u>, 195 F.3d at 1253, 1255 (Edmondson, J., concurring) (noting that the defendant was entitled to judgment as a matter of law because the plaintiff failed to present evidence that there was any discrimination based on her sex, as "[d]iscrimination based on plaintiff's sex must be proved in harassment cases.")

While it is not necessary to further address Plaintiff's sexual harassment claim, the Court wishes to make an additional finding with respect to Plaintiff's hostile work environment allegation. Plaintiff contends she was subjected to a hostile work environment because Akisha Fedd physically touched her twice and because she was subjected to discussions during meetings wherein nursing staff members discussed male patients' genitalia. To establish a hostile work environment claim, a plaintiff must show that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a

---

[11] There is similarly no evidence the alleged harassment based on the conversations about patients' genitalia was based on Plaintiff's sex.

discriminatorily abusive working environment. Id. at 1245. The conduct alleged by Plaintiff does not rise to this elevated standard.

"Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." Reeves, 594 F.3d at 808. "In evaluating the allegedly discriminatory conduct, we consider its 'frequency . . . ; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 808-09 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The plaintiff must prove that the environment was both subjectively and objectively hostile. Id. at 809 (citing Harris, 510 U.S. at 21-22, 114 S.Ct. at 370). "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." Mendoza, 195 F.3d at 1246. "So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious." Harris, 510 U.S. at 22, 114 S.Ct. at 371 (citation omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Oncale, 523 U.S. at 81, 118 S.Ct. at 1003 (quoting Harris, 510 U.S. at 23, 114 S.Ct. at 371). To be actionable, the behavior "must result in both an environment

that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive." <u>Miller</u>, 277 F.3d at 1276.

Defendants' argument is twofold. First, it argues that Plaintiff herself did not subjectively perceive the environment to be abusive. Defendants state that Plaintiff did not label any of the incidents as sexual in nature until she was terminated, that she did not use the grievance procedure to report the incidents, and that she never reported any allegations of sexual harassment to Akisha Fedd's supervisor. Defendants also state that there is no evidence that Akisha Fedd's alleged behavior affected Plaintiff's job performance.

Defendants' second argument is that the events were not objectively severe or pervasive enough to support a hostile work environment claim. Defendants contend that the two touching incidents and an unspecified number of conversations about male genitalia are just isolated incidents and do not constitute severe or pervasive harassment under the standards set by the Eleventh Circuit.

Plaintiff does not directly address and refute Defendants' arguments in her response brief. She discusses the general law about severity and pervasiveness, along with the objective and subjective tests for a hostile work environment claim, but does not tie those general principles to her specific claims. Plaintiff cites two cases, one from the Ninth Circuit and one from the Seventh Circuit, and gives a one sentence description of each, but again does not provide any analysis or

comparison of Plaintiff's case to those cases. Further, Plaintiff provides no explanation as to why the Court should look outside of Eleventh Circuit jurisprudence when deciding this issue.

In any event, even assuming Plaintiff subjectively believed the alleged harassment created an abusive workplace, this perception would not be objectively reasonable. As for the first factor discussed in Reeves, the frequency of the harassing conduct, Plaintiff testified that Akisha Fedd touched her twice, once on January 20 and once on February 25, and that at meetings, nurses would discuss penis size. Plaintiff did not specify how many times she was subjected to these conversations, but it is clear from her testimony that the conversations were not a daily occurrence. These allegations do not meet the level of pervasiveness required in the Eleventh Circuit. *See* Lockett v. Choice Hotels Int'l, Inc., 315 F.App'x 862, 866 (11th Cir. 2009) (employee experienced harassment on a daily basis for four months); Reeves, 525 F.3d at 1139 (daily harassment for almost three years); *compare* Robinson v. U.A.B., No. 2:10-CV-02692-AKK, 2012 WL 4725958, at *4 (N.D. Ala. Sept. 27, 2012) (four incidents over a three month period was not frequent); White v. Potter, No. 1:06-CV-1759, 2007 WL 1330378 (N.D. Ga. Apr. 30, 2007) (plaintiff's allegations of three specific incidents and that his co-workers called him gay and harassed him for eleven months did "not provide the Court with any basis to quantify whether the conduct was frequent").

As for the second and third factors discussed in <u>Reeves</u>, the Court finds that the complained-of conduct did not rise to the level of being severe, physically threatening, or humiliating sufficient to survive summary judgment. The bar set in the Eleventh Circuit for conduct to be considered severe or pervasive is extraordinarily high. Courts have rejected sexual harassment claims that are objectively far more serious than the conduct at issue in this case. *See, e.g.*, <u>Mendoza</u>, 195 F.3d at 1247-49 (finding that "one instance in which Page [the alleged harasser], said to [Plaintiff] Mendoza, 'I'm getting fired up,' (2) one occasion in which Page rubbed his hip against Mendoza's hip while touching her shoulder and smiling; (3) two instances in which Page made a sniffing sound while looking at Mendoza's groin area and one instance of sniffing without looking at her groin; and (4) Page's 'constant' following and staring at Mendoza in a 'very obvious fashion'" were insufficient to support a hostile work environment claim); <u>Simmons v. Mobile Infirmary Med. Ctr.</u>, 391 F.Supp.2d 1124, 1133 (S.D. Ala. 2005) (finding that defendant's conduct in touching plaintiff's breasts on four to five occasions over a period of eight months was not sufficiently severe or pervasive to alter the employee's terms or conditions of employment). While Plaintiff may have found the conduct subjectively uncomfortable, "the alleged sexual remarks and two incidents of brief touching fall below the minimum level of severity or humiliation needed to establish sexual harassment." <u>Lockett</u>, 315 F.App'x at 866 (citing <u>Mendoza</u>, 195 F.3d at 1246-47);

see also Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 584-86 (11th Cir. 2000), abrogated on other grounds as recognized by Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008) (holding that defendant's actions placing his hand on plaintiff's knee and touching the hem of plaintiff's dress were not severe or pervasive enough to amount to a hostile work environment); Alexander-Johnson v. Lids/Hat World, No. 1:07-CV-865-TWT, 2008 WL 5115195 at * 9 (N.D. Ga. Dec. 2, 2008) (allegations that a co-worker touched the inside of plaintiff's thigh and that a supervisor tried to touch plaintiff's breast with a hat grabber were not severe).

Finally, there is no evidence in the record whatsoever that the complained-of conduct unreasonably interfered with Plaintiff's job performance. In fact, there is no evidence that the conduct interfered with her job performance at all. Plaintiff did not miss any work because of the alleged events. She has not presented any evidence of any physical, emotional, or mental harm from the events. On the contrary, Plaintiff testified that she believed she had been doing well at work and had not had any work performance issues prior to her termination, testimony which completely undercuts the job performance factor.[12]

---

[12] While Plaintiff alleges in her complaint that the harassment "adversely affected Plaintiff's psychological well being" and that she "sustained emotional suffering and injury attributable to the harassment," (Doc. 6 at 10), Plaintiff may not rest upon mere allegations in her pleadings to defeat Defendants' motion. Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).

Considering the acts "in context, not as isolated acts," <u>Mendoza</u>, 195 F.3d at 1246, the Court finds that in their totality, the alleged incidents do not meet the threshold established by the Eleventh Circuit to survive summary judgment. Plaintiff has not submitted sufficient evidence from which a reasonable jury could find that the alleged sexual harassment was frequent, severe, physically threatening, humiliating, demeaning and/or unreasonably interfered with her job. The complained-of conduct simply does not create an environment "permeated with discriminatory intimidation, ridicule, and insult" as required to establish a hostile work environment claim under Title VII. <u>Harris</u>, 510 U.S. at 21, 114 S.Ct. at 370.

### B.   Count Three - Retaliation

Under Title VII, employers are prohibited from discriminating against an employee who has either (1) opposed an employment practice made unlawful under Title VII; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).  Plaintiff alleges that she was unlawfully terminated in retaliation for opposing the unlawful employment practice of sexual harassment. Specifically, Plaintiff contends she was fired in retaliation for complaining about Akisha Fedd's offensive conduct.

Plaintiff's retaliation claims are based upon circumstantial evidence. Thus, the Court must apply the burden-shifting framework of <u>McDonnell Douglas Corp.</u>

v. Green, 411 U.S. 792, 93 S.Ct. 1817 36 L.Ed.2d 668 (1973), to resolve the pending motion. To establish a prima facie case of retaliation, Plaintiff must show: (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there was some causal relation between the two events. Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008).

If Plaintiff can establish a prima facie case, the burden shifts to the Defendants to articulate a legitimate, non-retaliatory reason for the challenged employment action. Id. Then the burden moves back to Plaintiff to show that the Defendants' proffered reasons are merely pretext to mask discriminatory actions. Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009). Plaintiff may establish pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).

Defendants argue that Plaintiff cannot establish a prima facie case of retaliation because she did not engage in protected activity and even if she did, there is no causal connection between the protected activity and the adverse employment action. The Court agrees that Plaintiff did not engage in statutorily protected activity as defined by the law.

To establish that she engaged in a statutorily protected activity, Plaintiff must show that she "had a good faith, reasonable belief in unlawful employment practices." Weeks v. Harden Mfg. Corp. 291 F.3d 1307, 1311-12 (11th Cir. 2002) (quotation omitted). This standard has been described as follows:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).

Plaintiff contends she engaged in protected activity by reporting Akisha Fedd's conduct on January 20 and February 25, 2011. To show that she engaged in statutorily protected conduct, Plaintiff does not have to show that she opposed conduct which actually violated Title VII. In other words, Plaintiff does not have to prove that Akisha Fedd actually harassed her. Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989). But to meet her burden under Title VII's opposition clause, Plaintiff must show "both that [s]he subjectively believed that [Defendant] engaged in unlawful discrimination and that her belief was objectively reasonable in light of the facts and record present." Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010) (citation omitted).

The Court finds that even assuming Plaintiff subjectively believed that Defendants engaged in the unlawful employment practices alleged above, i.e., the sexual harassment of Plaintiff, that belief was not objectively reasonable.

To show objective reasonableness, Plaintiff "need not prove that the conduct [s]he opposed was actually unlawful, . . . but the reasonableness of [her] belief that [Defendant] engaged in an unlawful employment practice must be measured against existing substantive law" at the time of the offense. Howard, 605 F.3d at 1244 (citation omitted). "Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of [the Eleventh Circuit] or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable." Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1214 (11th Cir. 2009); see also Vinson v. Dep't of Corr., Fla., 672 F.Supp.2d 1247, 1255 (N.D. Fla. 2009) ("[I]n analyzing the reasonableness of [a] plaintiff's opposition to alleged discrimination and retaliation, the Court will apply the substantive law of the Eleventh Circuit as it existed at the time the alleged [conduct] took place."). An otherwise unreasonable belief that the defendant's conduct was unlawful is not rendered reasonable by the plaintiff's "ignorance of the substantive law." Weeks, 291 F.3d at 1317.

As discussed above, to establish a sexual harassment claim under Title VII, an employee must show, among other things, that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. Mendoza, 195 F.3d at 1245. Even if Plaintiff subjectively held a good faith belief that sexual harassment had occurred, the Court determined in Part III(A) above that the alleged conduct is not objectively severe or pervasive enough to support a hostile work environment claim. Nor was the complained-of conduct "close enough [to unlawful conduct] to support an objectively reasonable belief" in light of existing Eleventh Circuit precedent at the time of the offenses. *See, e.g.*, Gupta, 212 F.3d at 584-86 (11th Cir. 2000); Mendoza, 195 F.3d at 1238 (11th Cir. 1999); Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999). Because the conduct fell well below the threshold for actionable severe or pervasive conduct, Plaintiff did not have an objectively reasonable belief that she was opposing unlawful conduct under Title VII. Therefore, her retaliation claim fails because she cannot establish that she engaged in statutorily protected conduct.

## IV.   CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment (Doc. 33) is granted.

**SO ORDERED**, this the 16th day of September, 2013.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

mbh